UNITED STATES v. KNIGHT et al.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1913.)

No. 3,921.

INDIANS (§ 15*)—INDIAN LANDS—ALLOTMENT—CONVEYANCE BY HEIRS—AP-
PROVAL—AUTHORITY—WHAT LAW GOVERNS.

Act Cong. April 26, 1906, c. 1876, § 22, 34 Stat. 145, provided that the
adult heir of any deceased Indian of either of the Five Civilized Tribes,
whose selection of public land had been made, or to whom a deed or pat-
ent had been issued for his share of the land of the tribe, might sell
and convey the land so inherited, except that all such conveyances were
subject to the approval of the Secretary of the Interior. Act May 27,
1908, c. 199, § 9, 35 Stat. 315, provided that the death of any allottee of
the Five Civilized Tribes should remove all restrictions on the aliena-
tion of the allottee's land, except that no conveyance of any interest of
any full-blood Indian heir in such land should be valid, unless approved
by the court having jurisdiction of the settlement of the allottee's es-
tate. *Held*, that the validity of deeds of Indian heirs depends on the law
in force at the date of the deed, and hence, where a conveyance by a sole
Indian heir of her inherited allotment was made October 12, 1908, and
was approved by the county court having jurisdiction of the settlement
of the ancestor's estate, it was valid, without the approval of the Sec-
retary of the Interior, though the ancestor died prior to the adoption of
the act of 1908.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–
44; Dec. Dig. § 15.*]

Appeal from the District Court of the United States for the Eastern
District of Oklahoma; Ralph E. Campbell, Judge.

Action by the United States of America against Morris F. Knight
and another. Judgment for defendants, and the United States appeals.
Affirmed.

William J. Gregg, U. S. Atty., of Tulsa, Okl. (John B. Meserve, of
Muskogee, Okl., on the brief), for the United States.

John B. Campbell and Joseph C. Stone, both of Muskogee, Okl.
(Wm. O. Beall and Thos. H. Owen, both of Muskogee, Okl., and
Harry H. Rogers, of Holdenville, Okl., on the brief), for appellees.

George S. Ramsey and C. L. Thomas, both of Muskogee, Okl.,
amici curiæ.

Before SANBORN and CARLAND, Circuit Judges, and WIL-
LARD, District Judge.

CARLAND, Circuit Judge. This is an appeal from a judgment dis-
missing a bill filed by the United States upon a demurrer thereto by
appellees. The bill alleged that on September 24, 1904, one Darkey
Stop, a duly enrolled member and citizen of the Cherokee Tribe of
Indians, selected as her allotment and distributive share of the public
lands of said tribe the following parcel: The south half of the south-
east quarter, section 10, township 20, range 13. Said land was duly
allotted to said Indian, and thereafter a patent for the same was duly
executed by W. C. Rogers, principal chief of the Cherokee Tribe,
which patent was approved by the Secretary of the Interior. Darkey

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

206 F.—10

Stop died November 17, 1906, leaving surviving her as sole heir at law a daughter, Caniyah Stop, who is a duly enrolled member and citizen of the Cherokee Tribe of Indians of the full blood. Upon the death of Darkey Stop the above-described land descended in fee to said Caniyah Stop. On October 12, 1908, Caniyah Stop executed and delivered to Morris F. Knight and Cyrus S. Avery a deed with covenants of warranty for the land in question, which deed was approved by order of the county court of Adair county, Okl., the court having jurisdiction over the settlement of the estate of Darkey Stop, deceased, but was not approved by the Secretary of the Interior. The bill prayed that the deed from Caniyah Stop to Knight and Avery be adjudged void.

The appellant claims that the deed was void for the reason that it was not approved by the Secretary of the Interior. The validity of the claim of appellant must be determined by the construction of section 22 of the Act of April 26, 1906, c. 1876, 34 Stat. 137, and section 9 of the Act of May 27, 1908, c. 199, 35 Stat. 312. These sections read as follows:

Section 22:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

Section 9:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyances of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions: Provided, further, that the provisions of section twenty-three of the act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to all wills executed under this section."

Darkey Stop having died before May 27, 1908, it is claimed that the deed of Caniyah Stop was invalid because not approved by the

Secretary of the Interior as provided in section 22 above quoted, although it was executed October 12, 1908, and therefore after section 9, above quoted, was enacted. In other words, it is claimed that as to all full-blood Indian heirs whose ancestors died before May 27, 1908, the approval of their deeds must still be by the Secretary of the Interior.

The question therefore to be decided is this: By what authority should the deed from Caniyah Stop to Knight and Avery have been approved, the Secretary of the Interior or the county court of Adair county? The only circumstance that is urged as a reason why section 9 does not control is the fact that Darkey Stop died before it became a law. Very exhaustive arguments have been presented on both sides and much has been said concerning the following words found in section 9:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land."

It is urged by counsel for appellant that this clause refers to the death of an allottee who shall die after the passage of the law, and that to hold that it referred to the death of an allottee before the law became effective would be to give it retrospective force. We fail to see how appellant's case is in any wise strengthened if we admit all that counsel claim for the clause above quoted. The only complaint made of the deed made by Caniyah Stop is that it was not properly approved, but the death of Darkey Stop in no wise affects the question of approval because it is nowhere provided that death shall remove that requirement. Why, then, should we trouble ourselves about the death of the allottee or when it occurred? Both by the law of April 26, 1906 (34 Stat. 137), and the law of May 27, 1908 (35 Stat. 312), the deed of a full-blood Indian heir was valid if approved, but not until approved, as provided in those acts. And as it cannot be claimed or pretended that the death of the allottee in any wise affected the requirement of approval, either by the Secretary of the Interior or by the county court in Oklahoma having jurisdiction over the settlement of the estate of the deceased allottee, it is clear that the decision of the question involved in this case simply requires us to determine as to what law, in regard to the approval of the deed of the Indian heir, was in force at the time Caniyah Stop executed and delivered the deed in question to Knight and Avery. There ought not to be, and we do not believe there is, any doubt about this. Prior to the passage of the law of April 26, 1906 (section 22), full-blood Indian heirs, being members of any of the Five Civilized Tribes in Oklahoma, could not convey their allotted lands unless there had been actual removal of restrictions by the Secretary of the Interior prior to the conveyance. On and after the above last-mentioned date down to the passage of the law of May 27, 1908 (section 9), conveyances by full-blood Indian heirs were valid if subsequently approved by the Secretary of the Interior. After the passage of the law of May 27, 1908, the last expression of the will of Congress as to how such deeds should be approved is found in section 9 hereinbefore quoted, and that law was complied with in regard to the deed of Caniyah Stop.

In Tiger v. Western Investment Company, 221 U. S. 286, 31 Sup.

Ct. 578, 55 L. Ed. 738, it became the duty of the Supreme Court to construe section 22 mentioned herein for the purpose of determining whether the provision in this section requiring the approval of deeds of Indian heirs by the Secretary of the Interior was effective after the expiration of the five-year period named in section 16 of the Act of June 30, 1902, c. 1323, 32 Stat. 503. For the purpose of construing said section the Supreme Court was of the opinion that it could refer to subsequent legislation, and did refer to and quote section 9 mentioned herein, and in regard thereto used the following language:

"The obvious purpose of these provisions is to continue supervision over the right of full-blood Indians to dispose of lands by will, and to require conveyances of interests of full-blood Indians in inherited lands to be approved by a competent court."

While the Supreme Court was not construing section 9, it was before the court, and we are informed as to what the court thought was its obvious purpose. We therefore conclude that, as the death of the allottee in no wise affects the requirement as to approval, the deeds of Indian heirs must be approved in accordance with the law in force at the date of the deed.

The Supreme Court of Oklahoma in MaHarry v. Eatman, 29 Okl. 46, 116 Pac. 935, and the United States Court for the Eastern District of Oklahoma in Harris v. Gale (C. C.) 188 Fed. 712, reached the same result as herein indicated, but for somewhat different reasons.

We are urged to give force and effect to what is claimed to be the construction placed upon section 9 by the department charged with the execution of the statute, namely, the Department of the Interior. In the case of a doubtful and ambiguous law, the contemporaneous construction of those who have been called upon to carry it into effect is entitled to great respect.

We are justified, however, in saying that immediately after the passage of the law of May 27, 1908, and down to August 17, 1909, the Department of the Interior placed a construction upon section 9 herein mentioned in accordance with the views herein expressed.

We are therefore of the opinion that the decree below should be affirmed.

And it is so ordered.