RICHARD et al. v. PARKER et al.

(Circuit Court of Appeals, Eighth Circuit. August 21, 1917.)

No. 4799.

INDIANS ⬤⟲16(3)—LANDS—OIL LEASE BY MINOR—EFFECT OF DEATH OF LESSEE.

In 1912 a Creek minor of the full blood, through his guardian, and with the approval of the Secretary of the Interior, executed an oil and gas lease on his allotment, which was subject to restrictions upon alienation. The lease provided for the payment of royalties to the Indian superintendent for the benefit of the lessor, and under the regulations of the department to which the lease was subject the superintendent was authorized to withhold payment of such royalties until it was considered for the interest of the minor or his heirs that they should be paid over. The lease further provided that, in event restrictions on alienation should be removed, it should be released from the supervision of the Secretary,

and royalties should be paid to the lessor, or the then owner of the land. The lessor died while still a minor, leaving his father as his sole heir. A large sum in royalties had previously been paid to the superintendent, and other royalties were thereafter paid to him. Act May 27, 1908, c. 199, § 9, 35 Stat. 315, provides that "the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee." *Held* that, under such statute, the effect of the death of the lessor was to terminate all control over the land and of the lease by the Secretary, and also over the royalties previously collected.

Stone, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by Eastman Richard and another, administrators of the estate of Samuel Richard, deceased, against Gabe E. Parker and another. Decree for defendants, and complainants appeal. Reversed.

Britton H. Tabor and J. B. Lucas, both of Checotah, Okl., for appellants.

Paul Pinson, Sp. Asst. U. S. Atty., of Muskogee, Okl. (D. H. Linebaugh, U. S. Atty., and W. P. McGinnis, Sp. Asst. U. S. Atty., both of Muskogee, Okl., on the brief), for appellees.

Before CARLAND and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. Samuel Richard, a minor, was a full-blood citizen of the Creek Nation of the Five Civilized Tribes of Indians, residing in Oklahoma. He held an allotment of 160 acres of land. On April 13, 1912, acting through his guardian, he executed an oil and gas lease of this land to the Kathleen Oil Company. The lease was approved by the probate court and by the Secretary of the Interior. On January 24, 1916, and while yet a minor, Samuel Richard died, and thereafter appellants were appointed as his administrators. The sole heir of Samuel Richard is his father, Eastman Richard, who is one of the administrators.

The lease provides for a payment to the United States Indian superintendent, for the use of the lessor, of a royalty on the proceeds of oil and gas obtained from the land. The lessee and its assigns have extracted large quantities of oil from the land, both before and after the death of the lessor, and have paid the superintendent, as royalties, the sum of $216,145.16. The greater portion of this amount was paid during the lifetime of the lessor. This suit was brought by the administrators of Samuel Richard against the superintendent and cashier of the Five Civilized Tribes to recover this money and to restrain them from collecting royalties further under the lease.

Under the original Creek treaty (Act March 1, 1901, c. 676, 31 Stat. 861) and the supplemental Creek treaty (Act June 30, 1902, c. 1323, 32 Stat. 500) the alienation of allotted lands was forbidden for a fixed period, without the approval of the Secretary of the Interior. By subsequent acts of Congress (Act April 21, 1904, c. 1402, 33 Stat.

189; Act April 26, 1906, c. 1876, 34 Stat. 137; Act May 27, 1908, c. 199, 35 Stat. 312) certain classes of beneficiaries were released from the restrictions upon alienation, but the land of Samuel Richard, as a minor, was subject to restrictions upon alienation during his lifetime. At the time of the execution of the lease to the Kathleen Oil Company, section 2 of the last-mentioned act of Congress contained this provision:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise."

In the lease appeared this condition:

"In event restriction on alienation shall be removed from all the leasehold premises described above, this lease shall be released from the supervision of the Secretary of the Interior, such release to take effect without further agreement, from the date such restrictions are removed, and thereupon the authority and power delegated to the Secretary of the Interior as herein provided shall cease, and all payments required to be made to the United States Indian superintendent shall thereafter be made to lessor or the then owner of said lands in person or be deposited to the credit of said lessor or his assigns at the Eufaula National Bank, of Eufaula, Oklahoma, or at such other place as the said lessor or his assigns may from time to time designate in writing, and changes in regulations thereafter made by the Secretary of the Interior applicable to oil and gas leases shall not apply to this lease."

The lease recited that it was subject to the regulations of the Secretary of the Interior then or thereafter in force. The regulations promulgated by the Secretary provided for the payment to the United States Indian agent of all royalties accruing under any lease made on behalf of a minor, and for the retention of these funds by the superintendent, or other designated disbursing officer, to the credit of the guardian of the minor. The superintendent was authorized by these regulations to withhold the disbursement of this money until it was considered for the interest of the minor or his heirs that it should be paid. The question presented for decision is whether the restrictions in the lease and in these regulations are still in force, or were they abrogated by that portion of section 9 of the act of May 27, 1908, which reads as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

In the acts which have been cited, Congress has manifested its intention gradually to release governmental control over the lands of those members of the Five Civilized Tribes who were deemed capable of the management of their own property. The act of May 27, 1908, very greatly enlarged the classes of those who were left free to deal

with their allotments. In the committee reports to each house of Congress, accompanying the bill, it was stated that one object of the bill was to release about 8,000,000 acres, or one-half, of the restricted allotments from further supervision by the United States over its alienation. Among other provisions for such release is that found in section 9 of the act, which has been quoted above. The language of this section seems clear and definite. The death of an allottee removes all restrictions over the alienation of his land, other than a homestead, except that no conveyance of any interest in the land by a full-blood Indian heir is valid unless approved by the proper probate court. No exception was made because of existing leases of the land, unless a lease had been executed, but had not been approved by the Secretary of the Interior; in that case, the lease was subject to the approval of the Secretary (section 3). Congress knew that many leases of Indian lands were outstanding, for it had authorized their execution by previous acts, and by section 3 of this act it permitted allottees of land from which restrictions were removed to cancel the leases upon agreement with the lessees. The omission to reserve any other supervision than that by the probate court over conveyances by full-blood heirs of allottees is rendered more significant by the fact that, in the next proviso in section 9, the right of supervision by the Secretary of the Interior over another class is expressly retained.

Notwithstanding the fact that Congress left but one restriction upon the alienation of this land, the control of the probate court, appellees claim that other restrictions exist to the extent that the Secretary of the Interior may collect the royalties under the lease made by the deceased allottee and may retain from his administrators the royalties collected before and since his death. In support of this claim appellees say that the Secretary of the Interior had the authority at the time this lease was made to make regulations as to the approval of the leases executed by minor allottees which had the force and effect of law; that these regulations provided for the impounding of the royalties and for the payment to the lessor, or his heirs, at the discretion of the Secretary as to time and amount; that the lease by Samuel Richard provided that it should be released from the grasp of these regulations only when all restrictions should be removed; and that as one restriction still exists, because the consent of the probate court must be obtained to validate a conveyance by the heir, all restrictions have not been removed, and therefore the terms of the lease and of the regulations of the Secretary remain in force as to control of the royalties. The answer to this contention is that the powers of the Secretary of the Interior over this land are only derivative. These supervisory powers, as expressed either in the regulations of his department, or in the lease, cannot survive the grant under which they were made, and when Congress declared that all restrictions upon alienation, except one, were removed, none of the powers reserved in the regulations and lease longer remained operative. By the enactment of this statute the right was conferred upon the heirs of the allottee to make a conveyance of the allotment upon the one condition of its approval by the proper probate court, and the ap-

proval of the Secretary of the Interior was unnecessary. United States v. Knight, 206 Fed. 145, 124 C. C. A. 211; Harris v. Gale (C. C.) 188 Fed. 712; McHarry v. Eatman, 29 Okl. 46, 116 Pac. 935; Nicholas v. Cornelius (Okl.) 152 Pac. 831; Hope v. Foley (Okl.) 157 Pac. 727.

The removal of all restrictions upon alienation included the release of control over the collection of royalties under the lease, after the death of the allottee, as the "royalties to accrue were a part of the estate remaining in the lessor." United States v. Noble, 237 U. S. 74–80, 35 Sup. Ct. 532, 535, 59 L. Ed. 844. While the royalties that had been collected and withheld by the Secretary of the Interior prior to the death of the lessor, were personal property (United States v. Noble, supra), the control of these funds was an incident of the power to approve of the lease; and, when Congress declared its purpose to allow the heirs of allottees to alienate the land free from all restrictions, we think it was the intention of Congress to dispense with further supervision by the Secretary of the Interior over the funds that had been collected under that power. In other words, Congress did not intend, in allowing the heirs of allottees to alienate their land free from all restrictions, subject only to the approval of the proper probate court, to leave the heir in the same position as the intestate was before his death. The legislation meant something. Neither did Congress intend to postpone the enjoyment of the estate by the heir until after he had sold it with the approval of the probate court, which would be the only way he could remove the only restriction left.

For these reasons the decree of the lower court is reversed, and the cause is remanded, with directions to enter a decree for complainants in accordance with this opinion.

STONE, Circuit Judge, dissents.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes