HARRIS et al. v. BELL et al.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1918.)

No. 4911.

1. INDIANS ☞15(2)——INDIAN LANDS——ALLOTTEES——RESTRICTIONS.

Full-blood heirs of a deceased enrolled citizen of one of the Five Civilized Tribes, on whose account an allotment was selected after his death by an administrator or by the Dawes Commission, take subject to the restriction in Act April 26, 1906, c. 1876, 34 Stat. 145, § 22, declaring that all conveyances made thereunder by heirs who are full-blood Indians are subject to the approval of the Secretary of the Interior.

2. INDIANS ☞15(2)——LANDS——ALIENATION BY HEIRS——DESCENT.

Where, under Original Creek Agreement (Act March 1, 1901, c. 676) § 28, 31 Stat. 869, 870, Supplemental Creek Agreement (Act June 30, 1902, c. 1323) § 7, 32 Stat. 501, and Appropriation Act March 3, 1905, c. 1479, 33 Stat. 1048, an allotment was made by the Dawes Commission in the name of a full-blood Creek Indian, born in 1903, enrolled on June 10, 1905, who died on June 22d of that year, the provisions of Act April 26, 1906, §§ 5, 19, imposing restrictions on alienations by allottees, do not apply; but section 22, declaring that all conveyances made by heirs who are full-

blood Indians shall be subject to approval of the Secretary of the Interior, governs.

3. INDIANS ⬡⟷15(2)—LANDS—ALIENATION—STATUTES—CONSTRUCTION.

Act May 27, 1908, c. 199, § 9, 35 Stat. 315, declaring that the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of the allottee's land, but that no conveyance of any interest of any full-blood Indian heir shall be valid, unless approved by the court having jurisdiction of the settlement of the estate of such allottee, has a prospective effect, and is inapplicable to conveyances made before its enactment; hence the Secretary of the Interior may, after the passage of Act May 27, 1908, approve, under Act April 26, 1906, § 22, a previously executed conveyance by a full-blood Indian heir.

4. STATUTES ⬡⟷162—REPEAL OF SPECIAL BY GENERAL ACT.

Specific legislation in relation to a particular class or subject is not affected by general legislation in regard to many classes or subjects, of which that covered by the specific legislation is one, unless the general legislation is so repugnant to the special that the legislators must be presumed to have intended thereby to modify or repeal it.

5. STATUTES ⬡⟷181(2)—CONSTRUCTION.

Every statute should have a reasonable, sensible construction, in preference to one which renders it, or a substantial part of it, useless or deleterious.

6. STATUTES ⬡⟷212—INTENT OF LEGISLATURE—PRESUMPTION.

The intention of the legislative body must be presumed to have been to benefit, not to injure, those interested in the subject of the law.

7. INDIANS ⬡⟷28—LANDS—ALIENATION BY HEIRS—JURISDICTION OF COURTS.

Act May 27, 1908, § 6, declares that the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma, while section 9 declares that the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of such allottee's land, but that no conveyance by any full-blood Indian heir shall. be valid, unless approved by the court having jurisdiction of the settlement of the estate of the allottee. An Indian, in whose name an allotment was made after his death, resided and died in that part of the Indian Territory which became, on creation of the state of Oklahoma, Wagoner county, and after that date the county court of Wagoner county had power, under Comp. Laws Okl. 1909, § 5142, to acquire jurisdiction of the settlement of his estate. The land allotted was situated, and the minor heirs to whom it in part descended resided, in that part of the Indian Territory which, upon statehood, became Okmulgee county. Prior to statehood, the United States District Court, which had plenary jurisdiction of the settlement of the estate of the deceased and the guardianship of the minors, appointed an administrator of the estate and a guardian for the minors. Upon statehood, jurisdiction of the guardianship proceedings, of the subject-matter, and of the parties thereto passed to the county court of Okmulgee county, and that tribunal ordered and confirmed the sale and conveyance of the interests of the minor heirs. Held, that the sale and conveyance were valid without the concurrence of the county court of Wagoner county.

8. INDIANS ⬡⟷15(1)—CONVEYANCE.

Where the conveyances by the several heirs of a deceased Indian, in whose name an allotment was made after his death, passed the entire interest of all of the heirs, none of the heirs have any interest which will allow them to attack the decision of the trial court as to the share descending to each heir.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

⬡⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by Annie Harris, formerly Annie Francis, and others, against Harry H. Bell and others. From a decree for defendants (235 Fed. 626), complainants appeal. Affirmed.

James C. Davis, of Muskogee, Okl. (R. C. Allen, of Muskogee, Okl., on the brief), for appellants.

P. J. Carey, of Muskogee, Okl., for guardian ad litem.

Belford & Hiatt, of Okmulgee, Okl., for appellee Womack

Frank F. Lamb, of Okmulgee, Okl., for appellee Gill.

William M. Matthews, of Okmulgee, Okl. (John S. Kirkpatrick, R. C. Martin, and H. M. Kirkpatrick, all of Idabel, Okl., and George S. Ramsey, of Muskogee, Okl., on the brief), for other appellees.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. This case presents many questions. The first is the character and extent of the restrictions on the alienation of 160 acres of land, which was formerly the property of the Creek Tribe, and was, on December 4, 1907, allotted by the Dawes Commission in the name of Freeland Francis, a new-born full-blood Creek Indian, who was born on April 30, 1903, was enrolled on June 10, 1905, and died on June 22, 1905. The right of Freeland Francis to an allotment, and to the land when allotted, descended under the Creek Agreements and the acts of Congress to his mother, Annie Francis (who by marriage has become Annie Harris), his brother Amos Francis, his sister Elizabeth Francis, and his half-brother Mack Francis. Annie, Amos, and Elizabeth are full-blood Creek Indians; Mack is a half-blood. On January 15, 1908, Annie made a deed of her interest in the land to Laura L. McGinnis, which was approved by the Secretary of the Interior on July 6, 1910, and the respondents H. L. Lightsey and John R. Taylor have succeeded to the right conveyed by that deed. On January 22, 1912, W. J. Cook, as guardian of Amos and Elizabeth, pursuant to orders of the county court of Okmulgee county, Okl., made his guardian's deed of their interest in the land to the respondents Lightsey and Taylor. The appellants Annie, Amos, and Elizabeth claim that these deeds are void on account of restrictions on their power to alienate these lands by sections 5, 19, and 22 of the Act of April 26, 1906, c. 1876, 34 Stat. 137, and section 9 of the Act of May 27, 1908, c. 199, 35 Stat. 312.

[1] The court below was of the opinion that the appellants' right to alienate this land was exempt from the restrictions imposed by these acts, and that was the opinion of this court in a like case. Sunday v. Mallory, 150 C. C. A. 408, 237 Fed. 526. The Supreme Court, however, on March 4, 1918, decided, in cases not distinguishable from that here in hand, that full-blood heirs of a deceased enrolled citizen of one of the Five Civilized Tribes, on whose account an allotment was selected after his decease by an administrator or by the Dawes Commission, are subject to the restriction in section 22 of the Act of April 26, 1906, to the effect that all conveyances made thereunder by heirs who are full-blood Indians are subject to the approval of the Secretary of the Interior. 34 Stat. 145; Brader v. James, 246 U. S. 88, 38 Sup.

Ct. 285, 62 L. Ed. ——; Talley v. Burgess, 246 U. S. 104, 38 Sup. Ct. 285, 62 L. Ed. ——. And this court has followed that decision. David v. Youngken (filed April 3, 1918) 250 Fed. 208, —— C. C. A. ——.

[2] In view of these decisions, the question arises whether or not Annie's deed, made on January 15, 1908, and approved by the Secretary of the Interior on July 6, 1910, constituted a lawful conveyance. Counsel for the appellants insist that it did not: First, because, as they insist, she and the brothers and sisters of Freeland Francis took as allottees, and not as heirs, and she and they were prohibited from alienating their interests in the land by sections 5 and 19 of the Act of April 26, 1906, 34 Stat. 138, 144; and, second, because the power of the Secretary to approve her deed under section 22 of that act was revoked by the Act of May 27, 1908. 35 Stat. 312, 315, § 9. But the first contention is inconsistent with the decision of the Supreme Court in Brader v. James, and of this court in David v. Youngken, cited above. In those cases the Supreme Court and this court had before them the question what restrictions were imposed by the Act of April 26, 1906, upon the alienation of their lands by full-blood descendants of deceased Indians in whose names those lands had been selected and allotted after their death, and they called such descendants heirs, and held that the restrictions imposed by section 22 governed their right of alienation. Moreover, Congress has persistently kept separate and imposed different restrictions upon the alienation of those to whom lands were allotted while they were living (Original Creek Agreement of March 1, 1901, c. 676, 31 Stat. 861, 863, § 7; Supplemental Creek Agreement, Act of June 30, 1902, c. 1323, 32 Stat. 500, 503, § 16; Act of April 26, 1906, 34 Stat. 144, § 19), and by the heirs of those deceased Indians in whose names lands were selected and allotted after their death (Original Creek Agreement, 31 Stat. 869, 870, § 28; Supplemental Creek Agreement, 32 Stat. 500, 501, § 7; Act of March 3, 1905, c. 1479, 33 Stat. 1048, 1071). By the acts first cited restrictions were placed upon the alienation of their lands by the members of the first class, but no restrictions upon the alienation of their lands by the members of the second class were imposed by any act of Congress prior to the Act of April 26, 1906. Skelton v. Dill, 235 U. S. 206, 207, 35 Sup. Ct. 60, 59 L. Ed. 198. The appellants in this case are members of the second class. They obtained their title under section 28 of the Original Creek Agreement, section 7 of the Supplemental Agreement, and the provision of the Appropriation Act of March 3, 1905, 33 Stat. 1048, 1071, to the effect that the Dawes Commission might enroll children born subsequent to May 25, 1901, but prior to March 4, 1905, and living on the latter date, to Indians whose enrollment had theretofore been approved by the Secretary, and might enroll and make allotments to such children. Freeland Francis was one of these new-born citizens.

The acts of Congress relating to this class of citizens in effect provide that the lands and moneys to which such citizen would have been entitled if living shall descend to his heirs according to the applicable laws of descent and distribution, and shall be allotted and distributed to them accordingly. 31 Stat. 869, 870, § 28; 32 Stat. 500, 501, § 7; 33 Stat. 1071. It was not as original members of the Creek Tribe, to

whom allotments were made while they were living, or as heirs of such members. It was not as allottees, but as heirs of a new-born citizen, for whom no selection or allotment had been made while he was living; it was not in their own right, but in his right, that the mother and the brothers and sister of Freeland Francis took this land. Now the Act of April 26, 1906, preserves the distinction between the two classes made by the prior legislation. It provides in section 19 (34 Stat. 144), with exceptions not relevant here, that no full-blood Indian of either of the Five Tribes shall have power to alienate the lands allotted to him for 25 years. It provides in section 22 that the adult heirs of any deceased Indian of either of said tribes, whose selection has been made, may sell and convey the lands inherited from such decedent, but that conveyances made under this provision by full-blood Indian heirs shall be subject to the approval of the Secretary of the Interior. Section 19 applies to full-blood Indians to whom lands were allotted while they were living, and it does not apply to their heirs or to the appellants. Section 22 applies to the heirs of deceased Indians whose selections have been made. The appellants are such heirs, and their power of alienation was not restricted by section 19; but the restriction thereon imposed by the Act of April 26, 1906, was imposed thereon and governed exclusively by section 22 thereof. Nor is there anything in section 5 of the act inconsistent with this conclusion. The first position of counsel for the appellant here is therefore untenable.

[3] Counsel's second position, that the power of the Secretary of the Interior to approve and validate Annie's deed was revoked by the Act of May 27, 1908, is not more tenable. She made her deed on January 15, 1908, before the Act of May 27 of that year was passed. At that time she had the right to convey her land subject only to the approval of the Secretary, and he had the right and power to approve it under section 22 of the Act of April 26, 1906, and he did approve it on July 6, 1910. The Act of May 27, 1908, provides in section 9 that the death of any allottee of the Five Civilized Tribes—

"shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee." 35 Stat. 312, 315.

The argument is that the Act of May 27, 1908, repealed the provision of section 22 of the Act of April 26, 1906, regarding the approval by the Secretary and that this deprived him of the power to approve deeds made before the passage of the Act of May 27, 1908. But that act declares that:

"The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act." 35 Stat. 312.

It makes an express amendment of the Act of April 26, 1906, 35 Stat. 315, § 8, and it contains no express repeal of that act or of the provision of section 22 which empowered the Secretary to approve deeds of full-blood heirs. The rational and established rule is that

where the validity of conveyances of land is conditioned by the approval of different officers, or by different restrictions at different times, the law in force at the date of the deed determines the restriction upon its validity, and that where at that date a specified officer is empowered to approve and validate it, he or his successor in office may lawfully do so after subsequent legislation has conditioned the validity of like conveyances with the approval of a different officer, or with different restrictions, and the true construction of section 9 of the Act of May 27, 1908, is that it is prospective, and not retrospective, in effect; that it applies to conveyances made after its passage, and is inapplicable to those made before its enactment. Pickering v. Lomax, 145 U. S. 310, 315, 12 Sup. Ct. 860, 36 L. Ed. 716; Lykins v. McGrath, 184 U. S. 169, 172, 22 Sup. Ct. 450, 46 L. Ed. 485; United States v. Knight, 206 Fed. 145, 148, 124 C. C. A. 211; Harris v. Gale (C. C.) 188 Fed. 712, 716; MaHarry v. Eatman, 29 Okl. 46, 116 Pac. 935, 941. And the decision is that Annie's deed was validated by the approval of the Secretary of the Interior on July 6, 1910, that it then became a legal conveyance of all her interest in the 160 acres here in controversy, and that thereupon it related back and took effect as of the date of its execution.

[4-7] The deed of the guardian of the minor heirs, Amos and Elizabeth, was made on January 22, 1912, pursuant to an order of the county court of Okmulgee county, Okl., to sell their interest in the land in controversy, and an order of that court confirming the sale and directing the guardian to convey that interest, which was made on January 15, 1912. As this deed was made after the passage of the Act of May 27, 1908, its validity is subject to and must be determined by that act. The pertinent provisions thereof are:

"That the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions," which provisions are not material to the issues now under consideration, "and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years." 35 Stat. 312, § 2.

"That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma," and that the Secretary of the Interior may appoint local representatives to investigate the administration and disposition by any guardian or curator of the estate of any minor, and in case of the dissipation, waste, or deterioration thereof through the carelessness of such guardian or curator to report the matter to the proper probate court, and to cause an investigation thereof and the application of the proper remedy. 35 Stat. 313, § 6.

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee." 35 Stat. 315, § 9.

Freeland Francis resided and died on June 24, 1905, in that part of the Indian Territory which, upon the creation of the state of Oklahoma on November 16, 1907, became Wagoner county, and after that date the county court of Wagoner county had power to acquire jurisdiction of the settlement of his estate. Compiled Laws of Oklahoma

1909, § 5142, p. 1158. The land which is the subject of this litigation was situated, and the minors resided, in that part of the Indian Territory which, upon the creation of the state of Oklahoma on November 16, 1907, became Okmulgee county, and the county court of that county has had plenary jurisdiction of the guardianship of their persons and property since that date. Prior to the creation of the state of Oklahoma, all the lands now within Wagoner county and all the lands within Okmulgee county were within the Western district of Oklahoma, and the United States Court for the Western District of Oklahoma had plenary jurisdiction of the settlement of the estate of Freeland Francis and of the guardianship of the minors Amos and Elizabeth. It had exercised that jurisdiction by appointing William J. Cook administrator of the estate of Freeland Francis, and by appointing him guardian of the persons and property of the two minors, before the state of Oklahoma came into existence. Mr. Cook had qualified in each capacity, and was discharging his duties therein, when the state was created. Upon the admission of the state the jurisdiction of the guardianship proceeding, of the subject-matter, and of the parties thereto passed, pursuant to the enabling act for Oklahoma and the Constitution and laws of Oklahoma, to the county court of Okmulgee county, and that court has since exercised jurisdiction thereover. No proceedings have ever been taken, so far as this record discloses, regarding the settlement of the estate of Freeland Francis, in the county court of Wagoner county.

The objection to the validity of the guardian's deed is that it has never been approved, as required by section 9 of the act of 1908, by the county court of Wagoner county, which, after the admission of the state, might have taken jurisdiction of the settlement of the estate of Freeland Francis. But is the first proviso of that section applicable to a guardian's deed made by order of a county court which had plenary jurisdiction of the guardianship of the persons and of the disposition of the property of the minors by a provision of the same law? Was it the intention of Congress that the exercise by the county court of its undoubted jurisdiction of the guardianship of these minors and of the disposition of their estate should be futile, unless some other court of equal rank, which happened to have jurisdiction of the settlement of another Indian's estate, approved it? Is it not more probable that it was the intention of Congress to grant to a county court, which has jurisdiction of the guardianship of the persons and of the disposition of the lands of minor heirs, unrestricted power to order the sale and conveyance of their property, and does not the true interpretation of the act exclude such sales and conveyances from the application of the first proviso of section 9?

This act must be read and construed in the light of the general laws upon the same subject in force at the time of its passage. United States v. Trans-Missouri Freight Association, 58 Fed. 58, 7 C. C. A. 15, 24 L. R. A. 73. Prior to its passage Congress had adopted the settled policy of conferring plenary jurisdiction of the disposition of leases of restricted lands of minors upon the trial courts in the Indian territory, and the jurisdiction of the approval of leases of such lands of adults up-

on the Secretary of the Interior. A claim had been made that leases made by guardians of minors pursuant to orders of such courts were void, unless approved by the Secretary. This court remarked that there could be no full and complete jurisdiction of the guardianship of minor Indians, and of the leasing of their allotments, in a court whose judgments are reviewable and reversible by the officer of another department of the government, and after a review of all the pertinent legislation held that the grant of jurisdiction to the trial courts excluded the power of the Secretary to approve or disapprove the leases they ordered to be made, and that his jurisdiction was limited to the approval of leases of adults. Morrison v. Burnette, 154 Fed. 617, 620, 83 C. C. A. 391, 394. It does not seem probable that the Congress intended by the act of 1908 to reverse this policy, which it had adopted and put in force, and to subject the decisions and orders of the trial courts which had jurisdiction to decide the advisability of and to order the sales and conveyances of the lands of minors upon full proof, to the action of other courts of equal rank which have no appellate jurisdiction over the former courts, and no power to draw to themselves the evidence produced before such courts, or to review their action in the light of that evidence.

It is a cardinal rule of the construction of statutes that specific legislation in relation to a particular class or subject is not affected by general legislation in regard to many classes or subjects, of which that covered by the specific legislation is one, unless it clearly appears that the general legislation is so repugnant to the special legislation that the legislators must be presumed to have intended thereby to modify or repeal it; but the special and the general legislation must stand together, the former as the law of the particular class or subject, and the latter as the general law upon other subjects or classes within its terms. State v. Stoll, 17 Wall. 425, 436, 21 L. Ed. 650; Washington v. Miller, 235 U. S. 422, 427, 428, 35 Sup. Ct. 119, 59 L. Ed. 295; Priddy v. Thompson, 204 Fed. 955, 958, 959, 123 C. C. A. 277, 280, 281; Board of Commissioners v. Ætna Life Ins. Co., 32 C. C. A. 585, 590, 90 Fed. 222, 227; Christie-Street Commission Co. v. United States, 136 Fed. 326, 333, 69 C. C. A. 464, 471.

Section 6 of the act of 1908 provides for the minor allottees and their property. It declares that the persons and property of minor allottees of the Five Civilized Tribes shall be subject to the jurisdiction of the probate courts of the state of Oklahoma. The proviso of section 9 by its terms treats of all full-blood Indian heirs of allottees of the Five Civilized Tribes, including both adults and minors. It does not, however, specifically enact that the deeds of guardians of minors made by the order of the probate courts of Oklahoma pursuant to section 6 shall be invalid unless approved by the courts having jurisdiction of the settlement of the estate of the respective deceased allottees. It does not show that in the enactment of this section there ever came to the minds of the legislators the question of the approval of such conveyances, and the probability is that that question never did arise in their minds. When the entire act is read and thoughtfully considered, it does not clearly appear from the provisions of sections 2, 6, and 9

that they are so repugnant that the Congress must have intended by the first proviso of section 9 practically to have revoked its grant by section 6 to the proper probate courts of Oklahoma of plenary jurisdiction to hear and determine the advisability of and to order the sales and conveyances of the lands of such minor heirs, and it would seem that under the rule which has been cited the two provisions must stand together—that of section 6 as the law of the sale of and of the conveyance of the lands of the minor full-blood heirs, and the proviso of section 9 as the law of the conveyances of full-blood adult heirs.

Again, the purpose of this legislation was not to place vexatious and useless obstructions to the disposition of their lands by the full-blood minor heirs, such as the subjection of their guardians' conveyances to the adjudication of two courts of equal rank, neither of which would have the power to reverse the other, or to effect a conveyance without the consent of the other, would be. On the other hand, it was to assure to such minors a plenary investigation, trial and decision by a competent court, of the advisability of sales of their lands and of the amounts for which they ought to be sold, and to secure to them adequate prices and a wise use or disposition of the proceeds they obtained, that this law was enacted. All this is completely accomplished and with unusual care by the provisions of section 6. Not only is a competent court thereby given plenary power and charged with the duty to accomplish this purpose, but provision is made for the appointment by the Secretary of special representatives to investigate the cases, to report to the county court, and to see that the end sought is attained. Nothing but delay, expense, and vexation could result from making the action of the court having jurisdiction of the guardianship, sale, and conveyance subject to the approval of another court of equal rank, which has no power to review the evidence before the former court and no authority to order or effect the sale itself.

Every statute should have a reasonable, sensible construction, in preference to an irrational one, which renders it, or a substantial part of it, useless or deleterious. The intention of the legislative body must be presumed to have been to benefit, not to injure, those interested in the subject of the law, and in the light of the considerations to which reference has been made it is incredible that the Congress ever intended to subject guardian's deeds of the lands of full-blood minor heirs, made pursuant to the orders of the only courts which had jurisdiction to direct their making, to the approval of any other court of equal rank, which had no appellate jurisdiction; and the conclusion is that the true interpretation of the Act of May 27, 1908, is that conveyances of adult full-blood Indian-heirs are subject to the first proviso of section 9, but that that proviso is inapplicable to guardian's conveyances of the interests of minor full-blood Indian heirs which have been regularly made pursuant to the orders of the county courts of Oklahoma which had jurisdiction of the subject-matters and the parties to the proceedings before them in which they were ordered, and that the guardian's deed of the interest of the minors, Amos Francis and Elizabeth Francis, was a valid conveyance without the approval of the county court which might have had jurisdiction of the settlement of the estate of Freeland Francis, whose heirs they are.

[8] The minors, Amos and Elizabeth, assign as error the decision of the court below that the title to the land in controversy descended to the heirs of Freeland Francis under sections 6 and 7 of the Supplemental Creek Agreement of June 30, 1902, 32 Stat. 500, 501, and the Appropriation Act of March 3, 1905, 33 Stat. 1048, 1071 in accordance with the provisions of chapter 49 of Mansfield's Digest of the Laws of Arkansas whereby the interest of Annie Francis became one-half and that of Amos, Elizabeth, and Mack one-sixth each, and that the court should have held that the title descended under section 21 of the Enabling Act of the State of Oklahoma (Act June 16, 1906, c. 3335, 34 Stat. 277), according to the laws of descent and distribution of that state, whereby Annie, Amos, Elizabeth, and Mack would each receive one-fourth of the land. But since by virtue of the conclusion that the guardian's deed of the interests of the appellants Amos and Elizabeth is valid, and that the title to all their interest in the land has passed to the respondents Lightsey and Taylor, these minors have no longer any interest in this assignment, and it is here dismissed. Neither the respondent Mack Francis,. nor the present owners of his share, Gertrude Womack and Eugene W. Gill, have appealed from the decree below or challenged the decision of this question by the court below.

That decision was in favor of Lightsey and Taylor, who now hold the interests of Annie, Amos, and Elizabeth; and so it is that that question is not longer here for determination; and the decree below is affirmed, with costs against the appellants.