## PICKERING *v.* LOMAX.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 342.   Argued and submitted April 27, 1892. — Decided May 16, 1892.

The treaty of Prairie du Chien, 7 Stat. 320, made grants of lands to certain Indians, upon condition that they should never be leased or conveyed by the grantees or their heirs. to any persons whatever, without the permission of the President of the United States.   One of those grantees conveyed his land in 1858 by a deed which had endorsed upon it the approval of the President, given in 1871.   The state court of Illinois held that the Indian had no authority to convey the land without permission from the President previously obtained.   *Held,*

(1) That this ruling of the state court raised a Federal question;

(2) That the permission thus given by the President to the conveyance, after its execution and delivery, was retroactive and was equivalent to permission before execution and delivery, as no third parties had acquired an interest in the lands.

THE court stated the case as follows.

This was an action of ejectment brought by Pickering against John A. Lomax and William Kolze to recover two parcels of land in Cook County, Illinois, which had originally been granted by the United States to certain Indians under the treaty of Prairie du Chien of July 29, 1829.   A jury was waived, the case tried by the court, and a judgment rendered in favor of the defendants.   The plaintiff thereupon sued out a writ of error from the Supreme Court of Illinois, which affirmed the judgment of the lower court.

Upon the trial, in order to establish his title, the plaintiff offered in evidence article 4 of the treaty of Prairie du Chien, (7 Stat. 320, 321,) which, so far as the same is material, reads as follows:

" There shall be granted by the United States, to each of the following persons, (being descendants from Indians,) the following tracts of land, viz. : To Claude Laframboise, one section of land on the Rivière aux Pleins, adjoining the line of the purchase of 1816 ; . . . to Alexander Robinson, for himself and children, two sections on the Rivière aux Pleins, above and adjoining the tract herein granted to Claude Laframboise.. . . . The tracts of land herein stipulated to be granted, shall never be leased or conveyed by the grantees, or their heirs, to any persons whatever, without the permission of the President of the United States."

Plaintiff then offered in evidence a copy of the patent issued December 28, 1843, signed by President Tyler under the provisions of the above treaty, granting the lands, including those in litigation, to Alexander Robinson for himself and children. The patent also contained the provision : " But never to be leased or conveyed by him, them, his or their heirs, to any person whatever, without the permission of the President of the United States."

The next instrument in plaintiff's chain of title was a decree in a suit in partition instituted February 22, 1847, in the Cook County Court of Common Pleas, between Alexander Robinson and his children, and evidence to show that the lands in question were set out to Joseph Robinson, one of the children.

The following deeds were then put in evidence :

Deed dated August 3, 1858, from Joseph Robinson and wife to John F. Horton, which had endorsed upon it the approval of the President of the United States, which approval was dated January 21, 1871.

Deed from Laon Straus, administrator, etc., of the estate of John F. Horton, deceased, to Moses W. Baer, dated October 6, 1863, and made in pursuance of an order of sale by the county court of Cook County for payment of debts.

Several intermediate conveyances of the premises, down to a deed dated November 10, 1866, from Henry H. Dyer and wife to Aquila H. Pickering, the plaintiff.

The defendant introduced no evidence, but at the close of the plaintiff's case moved that the plaintiff's testimony be

excluded, and the case dismissed, upon the ground that the deed of August 3, 1858, from Joseph Robinson and wife to John F. Horton was made in direct violation of the terms of the patent as to obtaining the approval of the President to the conveyance.

This motion was sustained, the court being of the opinion that Robinson had no authority to convey without obtaining the permission of the President beforehand; that the subsequent sanction obtained by persons claiming title under Robinson was invalid; and that even if such sanction would have the effect of giving force to the deed, yet, as the grantee under that deed was dead, the administrator's deed would not carry any title to the purchaser from the administrator, but that, if any title accrued by reason of the sanction of the President, it would be to the heirs of Horton.

Thereupon the court rendered judgment for the defendant, which was affirmed by the Supreme Court of Illinois, (120 Illinois, 293,) and the plaintiff sued out a writ of error from this court.

*Mr. William E. Furness* (with whom was *Mr. L. H. Bisbee* on the brief) for plaintiff in error.

*Mr. Robert Hervey*, for defendants in error, submitted on his brief.

I. The title to the lands did not pass to the Indians by the treaty. It only contained an agreement on the part of the government to convey, which did not pass a legal title. It was at most an equitable one. The legal title remained in the United States until the issuing of the patent nearly fifteen years afterwards. And then the limitation on the power of the patentees to convey formed a most important part of it, and this limitation clearly expressed in the patent, the Supreme Court of Illinois construed in the proceeding before it. Inasmuch as the titles to, and the conveyances of real property within any of the States, are exclusively matters for state jurisdiction, and as the Supreme Court of Illinois has in con-

struing the deed from Robinson (the Indian) to Horton, his grantee, decided that no title passed from Robinson to Horton for want of the permission of the President of the United States for the conveyance in apt time, my contention is that the decision of the Supreme Court of Illinois, settling as it does a question of the ownership of land within the State, and within, as I insist, the sole control of the Illinois court, is final and conclusive, and that in a case of this character, this court ought to follow and be bound by it, and that the writ of error in this cause ought to be dismissed for want of jurisdiction in this honorable court.

II. The conveyance from Joseph Robinson to John F. Horton, not having been permitted by the President of the United States before or at the time of its execution, was nugatory and could not be validated by any subsequent attempted approval. *Pickering* v. *Lomax*, 120 Illinois, 289, 293, 295.

If the tardy approval of the President was effective and had relation back to the time of the execution of the deed, that, under the law of Illinois, would not help the plaintiff in error, because the deed from the administrator of Horton, through which he claims, is not a deed purporting to convey the fee simple absolute. If the approval by President Grant in 1871, of a deed made by an Indian in 1858, whose power to convey was limited by the express terms of the patent, had any effect by relation, it was in favor of the heirs of John F. Horton and not of the plaintiff in error.

MR. JUSTICE BROWN delivered the opinion of the court.

This case turns upon the question whether the act of Congress prohibiting Indian lands from being conveyed, except by permission of the President, is satisfied by his approval endorsed upon a deed thirteen years after its execution, and after the death of the grantee and the sale of the land by his administrator.

1. A preliminary question is made by the defendant in error, as to the jurisdiction of this court. By Rev. Stat. sec. 709, our authority to review final judgments or decrees of the highest

courts of a State extends to all cases " where is drawn in ques-
tion the validity of a treaty or statute of, or an authority exer-
cised under, the United States, and the decision is against their
validity." The argument of the defendant in this connection
is that as the title to the lands did not pass by the treaty,
which contained only an agreement to convey, the proviso
ceased to be operative when the patent was issued in 1843;
that the same restriction upon alienation contained in the
patent was one which the Supreme Court of Illinois had con-
sidered; and that their construction, that no title passed from
Robinson and Horton for want of permission of the President
of the United States, could not be reviewed by this court.
There are two sufficient answers to this contention. First, the
proviso in the treaty did continue by its express terms to be
operative, so long as the land was owned by the grantees or
their heirs, and the object of carrying this proviso into the
patent was merely to apprise intending purchasers of the re-
strictions imposed by the treaty upon the alienation of the
lands. Second, the case raised the question of the validity of
an authority exercised under the United States, viz.: the
authority of the President to approve the deed thirteen years
after its execution, and the decision of the Supreme Court of
Illinois was against its validity; so that the case is directly
within the words of the statute.

2. So far as the main question is concerned, we know of no
reason why the analogy of the law of principal and agent is
not applicable here, viz.: that an act in excess of an agent's
authority, when performed, becomes binding upon the princi-
pal, if subsequently ratified by him. The treaty does not pro-
vide how or when the permission of the President shall be
obtained, and there is certainly nothing which requires that it
shall be given before the deed is delivered. *Doe* v. *Beardsley*,
2 McLean, 412. It is doubtless, as was said by the Supreme
Court of Mississippi in *Harmon* v. *Partier*, 12 Sm. & Marsh.
425, 427, "a condition precedent to a perfect title" in the
grantee; but the neglect in this case to obtain the approval of
the President for thirteen years, only shows that for that length
of time the title was imperfect, and that no action of ejectment

would have lain until the condition was performed. Had the grantee the day after the deed was delivered, sent it to Washington and obtained the approval of the President, it would be sticking in the bark to say that the deed was not thereby validated. A delay of thirteen years is immaterial, provided, of course, that no third parties have in the meantime legally acquired an interest in the lands.

If, after executing this deed, Robinson had given another to another person, with the permission of the President, a wholly different question would have arisen. But so far as Robinson and his grantees are concerned, the approval of the President related back to the execution of the deed and validated it from that time. As was said by this court in *Cook* v. *Tullis*, 18 Wall. 332, 338: " The ratification operates upon the act ratified precisely as though authority to do the act had been previously given, except where the rights of third parties have intervened between the act and the ratification. The retroactive efficacy of the ratification is subject to this qualification. The intervening rights of third persons cannot be defeated by the ratification." See also *Fleckner* v. *Bank of the United States*, 8 Wheat. 338, 363. In *Ashley* v. *Eberts*, 22 Indiana, 55, a similar act of the President approving a deed was held to relate back and give it validity from the time of its execution, so as to protect the grantee against a claim by adverse possession which arose in the interim between its date and the confirmation. " Otherwise," said the court, " a mere trespasser by taking possession after a valid sale and before its consummation, would have power to defeat a *bona fide* purchaser." This case was approved in *Steeple* v. *Downing*, 60 Indiana, 478, 497. In *Murray* v. *Wooden*, 17 Wend. 531, a conveyance of land by an Indian which, subsequent to its date, had been ratified by a certificate of approbation of the surveyor general in the form prescribed by law, was held to be inoperative upon the ground that, previous to the granting of such certificate, the Indian had conveyed to a third person, and the deed to such person had been approved in the mode prescribed by law previous to the endorsement of the certificate of approbation of the deed first executed. This was a clear case of rights intervening

between the execution of the first deed and its approval. In *Smith* v. *Stevens*, 10 Wall. 321, the right to convey the lands reserved for the benefit of the Indians was expressly vested in the Secretary of the Interior, upon the request of any one of the Indians named, and it was held that there being no ambiguity in the act which had provided the way in which the lands could be sold, by necessary implication it prohibited their being sold in any other way. "The sale in question not only contravened the policy and spirit of the statute, but violated its positive provisions." In that case there was no pretence that the requirements of the act had been fulfilled.

Nor do we consider it material that the grantee had in the meantime died, since, if the ratification be retroactive, it is as if it were endorsed upon the deed when given, and enures to the benefit of the grantee of Horton, the original grantee — not as a new title acquired by a warrantor subsequent to his deed enures to the benefit of the grantee, but as a deed imperfect when executed, may be made perfect as of the date when it was delivered. This was the ruling of the court in *Steeple* v. *Downing*, 60 Indiana, 478.

The object of the proviso was not to prevent the alienation of lands *in toto*, but to protect the Indian against the improvident disposition of his property, and it will be presumed that the President, before affixing his approval, satisfied himself that no fraud or imposition had been practised upon the Indian when the deed was originally obtained. Indeed, the record in this case shows that the President did not affix his approval until affidavits had been presented, showing that Pickering was the owner, and that the amount paid to Robinson was the full value of the land, and that the sale was an advantageous one to him.

We are constrained to differ with the Supreme Court of Illinois in its view of the treaty, and to hold that, so far as this question is concerned, plaintiff's chain of title contained no defect.

The judgment of the Supreme Court is, therefore,

*Reversed, and the case remanded for further proceedings not inconsistent with this opinion.*