### WESTINGHOUSE AIR BRAKE CO. v. CHRISTENSEN ENGINEERING CO.

(Circuit Court of Appeals, Second Circuit. January 25, 1904.)

#### No. 77.

1. PATENTS — VALIDITY AND INFRINGEMENT — VALVE MECHANISM FOR AIR-BRAKES.

The Boyden patent, No. 481,134, for a valve mechanism for automatic air-brakes, which admits both train-pipe air and auxiliary-reservoir air to the brake-cylinder in applying for emergency stops, and which is provided with means for restricting the flow of auxiliary-reservoir air, as

compared with the flow of train-pipe air, thereto, was not anticipated, and shows patentable invention; but, in view of the prior art, it must be restricted in construction to the combination of mechanical elements described and shown, or their equivalents, and, as so limited, claim 2 can be given no broader construction than to cover the mechanism described in claim 11. Claims 4 and 11 *held* infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 123 Fed. 306. See 113 Fed. 594.

Wm. A. Jenner, for appellant.

J. Snowden Bell and F. H. Betts, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge.    In disposing of this appeal, it would subserve no useful purpose to rehearse the history of the railway brake litigation during the past 15 years, or to discuss the mechanical construction of the devices under consideration.    To those who are familiar with the progress of the art, the issues herein are simple and easily understood.    This defendant was originally sued by this complainant for infringement of its Westinghouse patent, No. 360,070. The defendant there contended, and the court sustained its contention, that its device (the one which is here alleged to infringe) resembled that of certain Boyden patents, one of which is the patent here in suit, and a motion for a preliminary injunction was denied on that ground.    Thereafter complainant, having become the owner of said Boyden patents, brought this suit on one of them, alleging infringement thereof.    The court below originally granted a preliminary injunction, and afterwards, upon final hearing, an injunction and accounting, from which this appeal is taken.

The devices here in question belong to the class known as "quick action triple valves," such as are used in connection with the ordinary automatic brake systems on railways.    Their special and peculiar utility consists in their adaptation for use in effecting the application of the brakes for making emergency stops.    In the specification of the patent in suit, Boyden, the inventor, states that in all prior constructions a supplemental passage was required, in connection with the triple valve proper, in order to combine with the preservation of its ordinary functions the additional function of introducing train-pipe air into the brake-cylinder for emergency stops.    An example of a prior construction referred to in said specification is Westinghouse patent, No. 360,070.    There, upon an extreme reduction of pressure for an emergency stop, the piston of the triple valve uncovered a separate emergency port, through which train-pipe pressure passed from the train pipe into the brake-cylinder.    An improvement upon this construction, covered by Westinghouse patent No. 376,837, consisted in the use of a separate supplemental piston and valve.    Boyden states that he has "provided a new principle of construction and a new mode of operation, by use of which the desired result aforesaid may be produced without the aid of the auxiliary valve heretofore required for the purpose."    He then explains that this new invention embodies only a triple valve, per se, without auxiliary device; explains that its greater efficiency depends upon his in-

vention of means for restricting the flow of auxiliary-reservoir air to the brake-cylinder, as compared with the more open delivery of train-pipe air, and that, as a result of thus graduating the flow of air at different pressures, he secured the desired result by the use solely of the main valve, which "is here made to perform the office of opening communication to the brake-cylinder from both the train-pipe and the auxiliary reservoir in the quick application of the brakes for emergency stops."

The defendant alleges noninfringement, anticipation, and invalidity of the claims in suit. The admissions of defendant's experts and the opinion of the Supreme Court of the United States as to the Boyden patents simplify and narrow the scope of the issues presented, and dispense us from the necessity to discuss at length some of the defenses argued.

Messrs. Quimby and Christensen, in their affidavits in the original suit on patent No. 360,070, in differentiating defendant's device from that of No. 360,070, specifically pointed out the details in which defendant's device corresponded in construction and operation with the Boyden device. And defendant's expert, Livermore, having clearly and exhaustively discussed the whole railway brake art, is forced to admit that, with a single immaterial qualification, he finds in defendant's device all the elements of the three claims in suit. A comparison of the two structures establishes infringement of claims 4 and 11.

The court below, in its opinion, has, by its citations from the specifications of the patent and in its discussion of the evidence, accurately defined the construction of the patented valve and its operation in the emergency applications. Upon sudden reduction of train-pipe pressure a single triple valve piston moves to the extreme limit of its traverse, and opens a single emergency valve, which establishes communication through a single passage between both the train-pipe and auxiliary-reservoir passages and the brake-cylinder. The passage from the auxiliary reservoir is restricted at a given point. This is the means specified in the patent to comparatively restrict the flow of the two airs to the brake-cylinder. Such comparative restriction in emergency applications is necessary because the pressure of the train-pipe air is much lower than that of auxiliary-reservoir air, and it has been found to be of practical importance that the train-pipe air should be more freely vented into the brake-cylinder until the two pressures are equalized, or so that, in a certain sense, it may be said that the reservoir air follows the train-pipe air into the brake-cylinder. In defendant's valve, upon reduction of train-pipe pressure, a piston like that of complainant also moves to the extreme limit of its traverse, and opens a single emergency valve, which establishes communication through a single passage between both air passages and the brake-cylinder; the passage from the auxiliary reservoir being restricted as in complainant's device.

The Supreme Court of the United States (170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136), in discussing the Boyden patents, including the one here in suit, in connection with the Westinghouse patents, held as follows:

"Mr. Boyden has certainly exhibited great ingenuity in the discovery of a new and more perfect method of performing such [Westinghouse's] function.

If his patent be compared with the later Westinghouse patent, No. 376,837, * * * the difference between the two, both in form and principle, becomes still more apparent, and the greater simplicity of the Boyden patent certainly entitles it to a favorable consideration. * * * Under such circumstances, the law entitles him [Boyden] to the rights of an independent inventor."

In view of this statement, it is unnecessary to consider the evidence, which conclusively shows that this device involved invention.

The objections urged in the court below, and chiefly relied on here, attack the status of the patent in suit, and are to the effect that the patent, in view of the prior art, is not entitled to a broad construction, and that the claims in suit, especially claim 2, are void for various reasons, or, if not void, must be so limited as to relieve defendant from the charge of infringement. And counsel for appellant strenuously contends that the court below has misconceived the opinion of the Supreme Court as to the character of this patent, and has mistakenly held that it covered a primary invention.

The claims in suit are as follows:

"(2) In valve mechanism for automatic air-brakes, the combination of a communication with the brake-cylinder from both the auxiliary-reservoir and train-pipe, a single valve controlling said communication, and means to retard or restrict the flow thereto of the auxiliary-reservoir air when applying the brakes in comparison with the flow of train-pipe air, whereby train-pipe air at lower pressure than said auxiliary-reservoir air will pass said valve when making an emergency application of the brakes."

"(4) In a valve for automatic air-brakes, the combination of a communication with the brake-cylinder, a suitable valve controlling said communication, two air-passages coacting with said valve and relatively proportioned as to their capacity to allow the flow of both train-pipe air and auxiliary-reservoir air each at a different pressure to pass said valve when open, and a check-valve to prevent the return of air to the train-pipe."

"(11) In valve mechanism for automatic air-brakes, the combination of a main port communicating with a brake-cylinder from both the train-pipe and the auxiliary-reservoir, a suitable valve controlling said main port, a graduating-valve which admits air-pressure in small volume to the brake-cylinder, and air-passages coacting with said main port and relatively proportioned as to their capacity to allow both train-pipe air and auxiliary-reservoir air, each at a different pressure, to pass to said main port when the latter is open."

In view of the admission of defendant's expert that only two patents (Boyden 1883 patent, No. 280,285, and Holleman patent, No. 405,705) anticipate or impose limitations upon the claims in suit, we shall not discuss the numerous other patents cited.

The device of the Boyden 1883 patent admits both train-pipe air, and auxiliary-reservoir air to the brake-cylinder through the same valve, for the purpose of recharging the auxiliary reservoir when the pressure is reduced by leakage, without releasing the brake. The valve of this patent differs so materially in construction and operation from the automatic quick action valves here under consideration that its triple valve could not be used in connection with these later valves. The valve is provided with train-pipe, auxiliary-reservoir, and brake-cylinder connections, controlled by two pistons so connected together as to form a double-ended piston, balanced by equal pressure of auxiliary-reservoir air on the inner faces of both pistons. For reasons hereafter to be stated, it is unnecessary to further explain its construction. Upon a sudden release of a considerable quantity of train-pipe pressure, the piston descends in such a way

as to cause auxiliary-reservoir pressure to flow into the brake cylinder, and thereby, in combination with other parts of the apparatus, to permit train-pipe air also to pass into the brake-cylinder. It will be observed that this operation partakes of the characteristics of quick action operation. But it is admitted that this valve never went into practical use; that its operation would require great care and attention; that, while pressure may be increased as above, it cannot be diminished, except by releasing the brakes; and "that the passages are not properly proportioned to produce highly effective quick serial action." The patentee, in his specification, failed to refer to any capacity for quick action, and admitted, contrary to his own interest, in the Westinghouse-Boyden suit, considered by the Supreme Court, that it "was not a quick action valve, or intended as such." The statements of the objects of the invention in the specifications of the patent confirm the opinion of the court below that its scope is limited to an invention "whose object was to provide for replenishing, 'while the brake is on,' the air reservoir or brake-cylinder, when the pressure is reduced by leakage," etc. From the whole evidence, it is clear that this device does not provide any means for comparatively restricting the flow of the two airs to the brake-cylinder, and that such material alterations as would make it an operative quick action valve would destroy it for the performance of the functions for which it was designed.

Holleman patent, No. 405,705, of 1889, was not pleaded in the answer, nor greatly pressed upon the argument except as to the single point which will be considered hereafter. It describes and shows a triple valve, which, as stated in the specification, is capable, upon sudden great reduction of train pressure, of admitting air to the brake-cylinder from train-pipe and auxiliary-reservoir through a single passage. The drawings show a construction apparently capable of such operation. There is a conflict of testimony as to whether such construction would be practicable. This device appears to be an improvement upon an earlier Perkins patent, No. 163,242, of May 11, 1875. One serious objection to its limiting effect upon the patent in suit is that, while the two airs eventually flow through the same passage to the brake-cylinder, the passages from the train-pipe and auxiliary-reservoir, respectively, are controlled by separate, although rigidly connected, valves covering different and distinct ports, and which depend upon different air pressures to hold the valves upon their seats. It does not appear that any device has been made under the Holleman patent. It fails to show any proportioning of the auxiliary-reservoir and train-pipe airs, and the patent is entirely silent on this point.

But the relevancy of these two patents and of Westinghouse patent, No. 360,070, to the issues herein, appears from the contention by defendant that, in view of Boyden's single controlling valve for both airs, and Holleman's construction, and the restricted port of No. 360,070, no broad claim for a single valve controlling both airs could be sustained, and that it would not involve invention to proportion the flow of air in the reservoir and train-pipe passages so as to accomplish the result of the patent in suit. This contention brings us to a consideration of the forcible argument of counsel for

defendant that the claims in suit, and especially claim 2, are absolutely void.

Claim 2, for "communication with the brake-cylinder from both the auxiliary-reservoir and the train-pipe," and "a single valve controlling said communication," and means to retard "or restrict the flow thereto of the auxiliary-reservoir air when applying the brakes in comparison with the flow of train-pipe air, whereby," etc., comprises the single valve controlling both airs and the narrow opening in the auxiliary-reservoir air passage. This claim is broad enough in terms to include any single controlling valve, and any means to restrict comparatively reservoir air. It is admitted that "the essential feature of novelty and utility" is the single valve, controlling both train-pipe and reservoir air. But, as already shown, Boyden, in his 1883 patent, showed a device wherein, upon an extreme traverse of a piston, a single valve controlled the passage of train-pipe and auxiliary-reservoir air to the brake-cylinder. And in Holleman, as we have seen, the extreme traverse of a single piston controlling a valve, structurally single, but functionally double, causes said valve to admit train-pipe and auxiliary-reservoir air to the brake-cylinder, and thus accelerates the emergency action. Its two air passages seem to be adapted to the comparatively restricted construction covered by the patent in suit, as already shown. It may be assumed that Boyden of 1883 and Holleman were mere paper patents, not capable of successful practical operation. But this does not defeat their relevancy as limitations upon the scope of the patent in suit, provided they sufficiently embody the elements and disclose the principle of operation of said patent. Pickering v. Lomax, 104 U. S. 310, 319, 36 L. Ed. 716; Packard v. Lacing-Stud Co., 70 Fed. 66, 16 C. C. A. 639; Dashiell v. Grosvenor, 162 U. S. 425, 16 Sup. Ct. 805, 40 L. Ed. 1025. Their effect and that of Westinghouse patent, No. 360,070, in showing the prior use of a single controlling valve, and of restricted openings where more than one valve is used, is to establish that what the patentee did was to develop and combine along practical lines the ideas and instrumentalities of others, and those described in his own prior patent.

Defendant's expert, Livermore, has accurately defined the status of this patent in suit by his testimony, as follows:

"The Boyden patent in suit, however, is, so far as I know, the first one that shows a single valve which admits air both from the train-pipe and from the auxiliary-reservoir into the brake-cylinder, and in which the passage which supplies the air from the auxiliary-reservoir is of smaller size or sectional area than the passage which supplies the air from the train-pipe. * * * I have treated the invention forming the subject of the patent as including broadly the combination of elements by which the valves of the Boyden patent in suit accomplish the result aimed at with a mode of operation that differs substantially from that involved in all of the other quick action triple valves known to me, or considered by me in this case."

The patentee says in his specification, after describing his embodiment of his invention, as follows:

"My invention therefore includes any form of structure of valve wherein a single valve admits both train-pipe air and auxiliary-reservoir air to the brake-cylinder in applying for emergency stops, and which structure is provided with

means for restricting or retarding the flow of auxiliary-reservoir air to the brake-cylinder, as compared with the flow of the train-pipe air thereto."

But this does not necessarily follow from the statement of his invention, because the utmost that can be claimed for it is that it broadly covers his elements so combined as to accomplish an old result by a substantially new mode of operation.

Claim 2 should not be construed to cover every single controlling valve, and every means whereby to restrict the flow of reservoir air thereto, because each of these means was old. It is possible that a valve device might be constructed, embracing a single controlling valve and restricting means, and yet involve independent invention, or make use only of a combination of the elements found in the prior art. A construction of claim 2 to cover "every form of structure," etc., as is contended for by complainant, would not only unlawfully restrict other independent inventors who wished to avail themselves of the Boyden 1883 and Holleman valves in new and independent relations, but would, in effect, sustain said claim for a function, for the doing of a thing, the accomplishment of a result, in every possible way, irrespective of the means employed therefor. We conclude that the second claim, thus broadly construed, cannot be sustained.

If claim 2 be given such a limited construction as to cover only the combination of elements described and shown by the patentee and the equivalents thereof, then it is identical with claim 11.

The fourth claim covers specifically a "valve controlling two air passages coacting with said valve, and relatively proportioned as to their capacity to allow the flow" of the two airs, each at different pressures, to pass said valve, and "a check valve." The additional element is the check valve, which is found also in defendant's device. This claim is quite as broad as the scope of the invention admits. But here the specific means—the "air passages * * * relatively proportioned," and their operative relation "coacting with said valve" —are definitely set forth. We conclude that this claim is valid.

Claim 11 is a clear, precise, definite statement of the elements of complainant's invention, combined and limited in conformity with the statement of the invention in the specification. That these two claims are infringed is sufficiently shown by the comparison of the two devices and the admissions of defendant's experts, already discussed, and by the instructions given in defendant's "Christensen Instruction Book" for using its apparatus, as pointed out in the opinion of the court below.

Various other questions were raised in the briefs and on the arguments, such as the alleged impracticability of complainant's device, the fact that certain elements in defendant's infringing device perform a variety of functions not performed by those of complainant, etc. These contentions have not been discussed, but have been duly considered in determining the validity and scope of the claims in suit.

The decree of the Circuit Court is reversed as to claim 2, and is affirmed as to claims 4 and 11, without costs of this court, and cause remanded to the court below, with instructions to enter a decree in conformity with this opinion, and with two-thirds costs to complainant.