## PLUTO OIL & GAS CO. et al. v. LAND.

No. 18397. Opinion Filed Sept. 8, 1931.

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, and C. L. Billings, for plaintiffs in error.

R. K. Robertson, McDougal & Pryor, and Sam T. Allen, for defendant in error.

KORNEGAY, J. This cause comes from the district court of Creek county, Honorable Fred A Speakman being judge. The

case started by the filing of a petition in the district court of Creek county by Salina Land and Joseph H. Land against the Pluto Oil & Gas Company and the Gulf Pipe Line Company of Oklahoma on the 27th day of September, 1921. The petition sought to recover the oil that was extracted from the lands of the minor son of the plaintiffs, Alvin G. Land, who was a three-quarter Creek Indian by blood, and who died on the 10th day of October, 1918, leaving surviving as his heirs his father, Joseph H. Land, and his mother, Salina Land, the father being a half-breed Creek Indian and the mother a full-blood.

There was an allegation to the effect that no administration proceedings had ever been had on his estate, and that the debts and charges of every kind and nature against the estate had been paid in full. There was an allegation that in the year 1909, the defendants entered on the lands of the minor son, Alvin G. Land, to wit, the southeast quarter of the southwest quarter of section 12, township 18 north, range 11 east, without any authority of law save and except that, on or about the 3rd of November, 1913, Phil J. Lenhard, acting as guardian for the said Alvin G. Land, deceased, executed and delivered to the Pluto Oil & Gas Company an oil and gas lease, which was alleged to be void in the petition by reason of its not having been approved by the Secretary of the Interior, and it was further alleged that it was not intended to be so approved.

It was further charged that during the lifetime of Alvin G. Land, the taking away of the oil and gas out of the land was unlawful, and since the death of Alvin G. Land, it had been taking the oil and gas without any lawful right. It was alleged that $75,-000 was the value, and an accounting was asked for as to the amount of oil and gas that was taken. There was a further allegation that they were entitled to the highest market value, and there was a prayer for an accounting, and if it was done, for judgment. There was likewise a prayer that the defendants be required to set forth and exhibit any and all muniments of title giving them the right to possession or the right to extract the oil and gas. The petition was signed by McDougal, Lytle, Allen & Pryor as attorneys for the plaintiffs, and was indorsed "Lien Claimed."

The lease attacked was set out. It was approved by the county judge of Creek county, Okla. An answer was filed by the Gulf Pipe Line Company consisting of a general denial and claim that on the 6th day of May, 1908, Joseph H. Land, one of the plaintiffs, being the guardian of the estate of Alvin G. Land, executed to J. A. Boyd an oil and gas lease on the 40 acres of land, and the lease was in turn assigned to the Pluto Oil & Gas Company, and that prior to the month of August, 1911, the Pluto Oil & Gas Company entered into possession of the land and produced oil therefrom, and that from the month of August, 1911, oil was run and sold by the Pluto Oil & Gas Company to the defendant Gulf Pipe Line Company, a common purchaser of the Pluto Oil & Gas Company, engaged in that purchase in the state of Oklahoma, and that it was in duty bound to purchase such oil as being such common purchaser under the law, and it had bought the oil without any knowledge of any claim or right of the plaintiffs thereto.

Pluto Oil & Gas Company demurred and its demurrer was overruled, the ground of the demurrer being no cause of action, and the cause of action being barred by the statute of limitation. The demurrer was overruled and followed by exceptions. It then filed an answer consisting of a general denial and relying on a lease for oil and gas purposes made on the 6th of May, 1908, by the guardian of Alvin G. Land, executed to J. A. Boyd, which had been assigned to the Pluto Oil & Gas Company, and before August 11, 1911, and the fact that it entered upon the ground and put down wells and produced oil, and relied on the three-year statute of limitations, and also upon the two-year statute, and said that all the matters and things complained of were barred so far as Joseph H. Land was concerned.

There was a further claim that, in the year 1919, the Pluto Oil & Gas Company had entered into a contract with Salina Land and Joseph H. Land for a departmental oil and gas lease on the property, and had agreed to pay $5,000 bonus on the condition of its being finally adjudged to be valid, and that it did pay $5,000, but that in the Supreme Court of Oklahoma, in the case of Pluto Oil & Gas Company, Plaintiff in Error, v. H. C. Miller, Defendant in Error (95 Okla. 222, 219 Pac. 303) it was adjudged that Miller was the owner of the oil and gas mining rights. There was a further pleading that it was represented to the Pluto Oil & Gas Company that the lease purporting to have been made by the plaintiff below to H. C. Miller was procured by fraud and that in order to get the $5,000 the plaintiffs agreed to prosecute proper actions to establish the defendant's right to the oil and gas mining rights in the land, but that as soon as they

received the money they dismissed the claim., It asked for a judgment of $5,000 against Salina Land and Joseph H. Land, with interest at 6 per cent. from August, 1919. This answer was signed by H. B. Martin as attorney.

Reply was made to this denying the owing of the $5,000. There was an amended answer of the Gulf Pipe Line Company consisting of a general denial and setting up the lease on the land made by the plaintiff Joseph H. Land, as guardian for Alvin G. Land. It further set up the fact of the proceedings in the county court to correct the misdescription of the land so that the N. E. ¼ of the S. W. ¼ should read the S. E. ¼ of the S. W. ¼. Also, the action of the district court in correcting this error in the suit brought by the defendant against the guardian and the minor, resulting in a judgment of correction entered in the district court of Creek county, Okla. There was a claim also of being a common purchaser under the law, and of the Pluto Oil & Gas Company being in possession and having produced the oil, and the Gulf Pipe Line Company having bought it as such common purchaser.

There was a further claim that the royalties had been received by Joseph H. Land, the guardian, in the amount of $1,087.48, from August, 1911, to March 5, 1912, and a payment to Phil J. Lenhard of $2,645.84 as guardian, from March 16, 1912, to May 10, 1915, inclusive, and to J. E. Faught, guardian of Alvin G. Land, $2,781.44, from June 1, 1915, to October 31, 1918, inclusive. There was a further statement that these royalties became a part of the estate of Alvin G. Land, and that on the death of Alvin G. Land, the plaintiffs received this money as heirs of Alvin G. Land from the last guardian, less the monies that had been expended under orders of the county court. It further stated that in buying this oil and gas, it bought it without any knowledge that Alvin G. Land, or any one for him, was claiming the seven-eighths part that was paid to the Pluto Oil & Gas Company. There was a further plea that Salina Land and Joseph H. Land each ratified, confirmed, and adopted the lease of May 6, 1908, and were estopped from questioning the right of the Pluto Oil & Gas Company to operate the premises for oil and gas, and also the right of the defendant to purchase the oil.

There was a further statement that the Pluto Oil & Gas Company, during the time they were operating it, were operating it under the honest belief of having a valid and subsisting lease, and there was a claim of $5,000 set- off by reason of a payment made to them on account of what was to be a departmental lease made to it, title to which failed. There was a further claim that it accepted the oil produced by the Pluto Oil & Gas Company from November 1, 1918, and run from the premises, and that it paid to D. Buddruss, cashier, for the said Salina Land, one-half of one-eighth of the proceeds of all oil run after the 31st day of October, 1918, to the 18th of November, 1918, and that it had paid under the orders and directions of Joseph H. Land to him one-half of one-eighth of all the proceeds of all the oil produced by the Pluto Oil & Gas Company and run from the land after the 1st of November, 1918, to the 18th day of November, 1918. That it had paid under the directions of Salina Land and Joseph H. Land and H. C. Miller, the lessee, to Joseph H. Land, Salina Land, and H. C. Miller, all the proceeds of the oil run since the 18th of November, 1918. It further said that it adopted the allegations of paragraph 7 of the answer of the Pluto Oil & Gas Company, and that it was only secondarily liable. It further averred that it had on hands the working interest in the oil produced between the 1st and 18th days of November, 1918, which is tendered into court.

The proceedings in the case of Pluto Oil & Gas Company against Alvin G. Land, minor, in the district court of Creek county to correct the description in the Boyd lease are set out as exhibit "A" to the answer. The petition relies on various assignments of Boyd to the Pluto Oil & Gas Company. A guardian ad litem, Hughes, filed an answer for the minor. The journal entry correcting this lease appears at page 85 of the case-made, and it finds the execution of the lease to have been made, and the misdescription, and decrees that the mistake in description be corrected, and it finds that the S. E. ¼ of the S. W. ¼ of section 12, township 18 north, range 11 east, was intended to be conveyed in the oil and gas lease, and confirms in Pluto Oil & Gas Company the oil and gas lease in the S. E. ¼ of the S. W. ¼ of 12-18-11.

Pluto Oil & Gas Company filed an amended answer setting up the lease and its assignments and the various corrections and the payment of the royalties to the various guardians of the minor, after the other expenses were paid, and the death of the minor, and the settling with the parents, the plaintiffs, for the oil taken from the land, and claims a ratification of the lease of May 6,

1908, and an estoppel to question the rights of the Pluto Oil & Gas Company to operate the land. It is further said that it had acted in good faith in operating under the lease and making the payments, and that it was all done with the knowledge and consent of the lawful guardian of the minor. In the fifth paragraph, claim was made for the $5,000 paid to the plaintiffs for the departmental lease that failed, and for a finding that this money is due with 6 per cent. interest per annum from August 6, 1919. It is claimed that the $5,000 was gotten, and as soon as they got it, the plaintiffs lost interest in the prosecution of the suit to annul the Miller lease. It was further claimed in paragraph 7 that Joseph H. Land was of one-half Indian blood, and that he was, by virtue of section 185, art. 2, ch. 3, C. O. S. 1921, barred by limitations on the contracts not sued on in three years and for trespass on real property was barred by limitations of two years.

There was a further statement that it received no part of the proceeds from the oil run from November 1, 1918, and that on November 18, 1918, Salina Land and Joseph H. Land executed to H. C. Miller an oil and gas mining lease, which was approved by the county court of Creek county, Okla., and was adjudged by the Supreme Court of Oklahoma to be valid, and that H. C. Miller received seventh-eighths of the proceeds of the oil produced from the premises after the 18th of November, 1918, and Salina Land and Joseph H. Land received the royalties therefrom.

The evidence in the case was largely documentary and the arguments were mostly on the legal points arising from facts that were admitted. The trial court rendered judgment against the producing company, the Pluto Oil & Gas Company, and also against the purchasing company, the Gulf Pipe Line Company, in favor of only one of the plaintiffs, Salina Land, and found against Joseph H. Land, her coplaintiff.

The trial court evidently went on the theory that the lease relied on as having been made in 1908 was void, and therefore the rule was applied of giving Salina Land one-half of the oil and charging her with one-half of the expense of production up to the time the son died. The language of the journal entry, found in the case-made, on the subject, is as follows:

"And, thereafter, to wit, on the 17th day of November, 1926, this cause coming on for further hearing as per various orders of the court, and the parties being represented as formerly, and the court being fully advised in the premises, finds the issues in favor of the plaintiff Salina Land, and against the defendants Pluto Oil & Gas Company and the Gulf Pipe Line Company of Oklahoma, and that the plaintiff Salina Land is entitled to recover of and from the defendant Pluto Oil & Gas Company, for oil produced, marketed, and sold from the southeast quarter of the southwest quarter (S. E. ¼ S. W. ¼) of section twelve (12), township eighteen (18) north, range eleven (11) east, Creek county, Okla., and from the defendant Gulf Pipe Line Company of Oklahoma, for the oil so produced by the Pluto Oil & Gas Company and by it sold to the Gulf Pipe Line Company of Oklahoma one-half of seven-eighths (½ of ⅞ths) interest in all proceeds of the oil so produced, marketed, and sold from said premises prior to and including the 11th day of November, 1918, less one-half the sum of money actually and necessarily spent by the defendants in the production and marketing of said oil.

"The court further finds that the defendants took from the premises herein mentioned oil as follows:

| | Gross Value | Royalty Value | Working Interest Value |
|---|---|---|---|
| Up to May 6, 1918, Inclusive | $73,850.48 | 9,235.43 | 65,615.05 |
| May 6th, to October 10, 1918, Inclusive, | 7,212.14 | 889.01 | 6,223.13 |
| October 10, to November 18, 1918, Inclusive. | 1,352.14 | 181.52 | 1,279.62 |
| Total | 82,414.76 | 10,305.96 | 72,108.80 |

"The court further finds that the defendant Pluto Oil & Gas Company actually spent in the production and marketing of the oil above mentioned prior to and including May 6, 1918, the sum of $26,000, and that the actual expense of maintaining the mining operations on said lands and producing the oil therefrom from May 6, 1918, to November 18, 1918, inclusive was $200 per month.

"The court further finds that the value of one-half of seven-eighths (½ of ⅞ths) of all oil taken from said lease to and including May 6, 1918, less one-half of the operating cost is $19,307.52; that the value of one-half of seven-eighths (½ of ⅞ths) of all oil taken from said lease to and including October 10, 1918, less one-half of the operating cost is $22,469.09; that the value of one-half of seven-eighths (½ of ⅞ths) of all oil taken from said lease from May 6, 1918, to October 10, 1918, inclusive, less one-half operating cost is $2,611.56, that the value of one-half of seven-eighths (½ of ⅞ths) of the oil taken from May 6, 1918, to November 18, 1918, inclusive, less one-half of the operating cost is $3,056.85; that the value of one-half of seven-eighths (½ of ⅞ths) of the oil taken from October 10, 1918, to November 18, 1918, inclusive, less one-half of the operating cost is $_____.

"The court further finds that the plaintiff

J. H. Land should take nothing, and that his claim is without equity and that his petition should be dismissed. To all of which findings adverse to their respective interests, the Pluto Oil & Gas Company and the Gulf Pipe Line Company of Oklahoma, and J. H. Land each severally objected and excepted.

"It is, therefore, by the court considered, ordered, adjudged, and decreed that the plaintiff Salina Land have judgment against the defendants Pluto Oil & Gas Company and Gulf Pipe Line Company of Oklahoma, for $22,414.40, with interest thereon from date at the legal rate of interest, and that the plaintiff J. H. Land take nothing, that his petition is dismissed without cost to him."

From this it appears that the trial court held that the lease, under which the oil was extracted, was void. The point of contention here is that the court erred in making such a finding. We think that the trial court did err, and so hold.

At the time that the attempt was made by the guardian, J. H. Land, to execute the oil lease, under which the operations were had, the lease could be made by the guardian with approval of the county court. Sometime after that the law was changed so that had a new lease been made, the Secretary of the Interior would have had to join in the approval of it, though the making of it would have been in the same manner as it was before the act that went into operation 60 days from the 27th of May, 1908. The mistake that occurred in the lease was that instead of describing the land as the southeast quarter of the southwest quarter of section 12, it was described as the northeast quarter of the southwest quarter of said section. The order of the county court permitting the lease describes the land to be leased as the south half of the southwest quarter, which includes the land intended to be leased, but it appears that elsewhere by some means the draftsman of the papers described the land as the north half of the southwest quarter. The mistake was shortly afterwards discovered and an effort was made in the county court to correct it, and a petition so to do was filed by the guardian and the lessee, and on October 27, 1908, an order was made correcting the description. As to what success from a legal standpoint this effort made to correct the mistake in the county court had, it is not necessary here to discuss, as the plaintiffs in error in their brief seem to concede that the county court had no jurisdiction to make the correction. Under the decision of this court in Caulk v. Lowe, 74 Okla. 191, 178 Pac. 101, it is held that sections 5267 to 5275, Revised Laws of 1910, found in C. O.

S. 1921, sections 810 to 818, applied to the county court in probate matters. However, an inspection of the federal law on the subject will show that under the case of Morrison v. Burnette, 154 Fed. 617, it was held by the Circuit Court of Appeals of the Eighth Circuit that the Secretary of the Interior had nothing to do with leasing minor allotments, and that the approval by the court that appointed the guardian was all that was required. Under this authority, apparently, the county court was acting when it granted permission to the guardian to make the lease. In the Morrison v. Burnette decision by Judge Sanborn, the court had occasion to refer to the Act of Congress of April 26, 1906, found in 34 Stat. at L. p. 137, on the approval of the mineral leases in the Creek Nation, and it was there held that the Secretary of the Interior lost jurisdiction, and that the approval of the court having jurisdiction of the guardianship of a minor Creek was all that was required to validate it if properly executed. This same doctrine is laid down in Cowles v. Lee, 35 Okla. 159, 128 Pac. 688. In that case the court says:

"The United States court for the Northern District of the Indian Territory, at Tahlequah, prior to the erection of the state, exercising both probate and chancery powers, had the power to authorize a guardian to lease the lands of his ward for a period extending beyond his minority. Huston v. Cobleigh, 29 Okla. 793, 119 Pac. 416."

With reference to the procedure after statehood to obtain an oil and gas lease, this court held in Duff v. Keaton, 33 Okla. 92, 124 Pac. 291, what was necessary to be done in the way of court proceedings to secure a mineral lease on minor land. It cites the rule of common law not allowing the guardian to lease the land of his ward without the approval of the court, as being changed by our statute. It is clearly held therein that a lease granting oil and gas mining privilege for a term of years is not a sale of realty, as contemplated by section 5314, Comp. Laws 1905, and the second paragraph of the syllabus of that case is as follows:

"2. Property—Guardian and Ward—Oil and Gas Lease—Nature of Property—Sale by Guardian—'Personalty.' A lease granting oil and gas mining privileges for a term of years is a 'chattel real.'

"(a) A chattel real is 'personalty.'

"(b) A lease for such purposes, made by the guardian of a minor, permission of the court having first been obtained thereto, and such lease having been approved and confirmed by the court, though without the

preliminary notices essential for the order of sale and confirmation of the same in case of the sale of real estate of minors by guardians, is valid against a collateral attack."

A portion of the procedure in this case happened prior to the time of the rendering of that opinion, and some of it later. The procedure in that case was merely a request to the court for permission to lease, and it was granted the same day. Later it was attacked as being bad for the lack of formal notice and advertisement, etc.

As applied to the present case, there was a simple mistake in describing the land, the wrong quarter being given in the quarter section. At that time, the other lands of the minor had been leased, and everybody was acting on the theory that the lease, as actually made, described the 40 acres of ground intended to be leased. It is a common rule of equity that it looks upon as done that which ought to be done, and that it corrects mutual mistakes of the parties who made them upon a proper showing. The county court was in no wise deceived, and there appears to have been no fraud or anything to invalidate the lease. As far as the county court could, it corrected it. As far as the parties could, it was corrected, and not content with this procedure, a second time there was a procedure in the district court that undoubtedly had jurisdiction.

The fact that the Secretary of the Interior should have approved the lease, had it been made after this one was made, as a result of the change in the law, in our judgment would not in any way require him to approve the finding of the district court or the correction by the parties, under the proper sanction of the county court, of that which was intended to be made and which was in fact made under a description that was erroneous, and the consideration received prior to the time when the law was changed requiring those leases to be approved by the Secretary of the Interior. The correction related back just as the approvement of deeds relates back. See the case of Pickering v. Lomax, 145 U. S. 310, 36 L. Ed. 716, and Lykins v. McGrath, 184 U. S. 169, 46 L. Ed. 485.

The order in the case called for the right land. We see no reason why the correction could not have been made, and after it was made the lease was valid. It then follows that in entering upon the land, the Pluto Oil & Gas Company were not trespassers of any kind or in any way. They followed the usual rule, no bad faith was shown, and we think the lease was good as long as it lasted.

This obviates the necessity of passing on the question of the statute of limitations, and will necessarily cause a reversal of the action of the lower court in rendering a judgment for the oil taken from the land up to the expiration of the lease May 6, 1918.

As to the oil and gas extracted thereafter, it stands on a different basis. When by its terms the lease, under which the development was had, expired, apparently the parties for a short while operated before new leases were made and continued to extract the oil and to pay in accordance with the original lease. There was an interim between the expiration of the guardian lease, May 6, 1918, and the death of the minor, October 10, 1918, during which time the royalty money was paid to the guardian, J. E. Faught, and the guardian in turn paid it to the plaintiffs. It seems to be conceded, however, by the appellants that the rights of the parties during that time would be determined by the amount of oil taken out, less the expense of operation, as distinguished from following the terms of the lease until a new one was made.

The lower court found that the plaintiff Joseph H. Land was not entitled to recover his portion of it, and dismissed the case as to him and he has not appealed. That leaves the question here as to whether or not Salina Land, recovering from the operating company the one-half in value of the oil taken out during that interim, less operating cost, could be charged with the amount of money that she got as a bonus for a renewal of the lease, title to which failed by reason of her conduct in making the lease to another party, and as soon as she got the money, abandoning the litigation. We do not believe, under these conditions, that there is any reason why Salina Land should not account. She got the money, the consideration failed. It is a proper set-off. The law was declared to be that the county court had jurisdiction instead of the Secretary of the Interior, but the producing company was apparently trying to follow the law and comply with the regulation of the Interior Department, which was claiming jurisdiction and which had frequently exercised jurisdiction. It would not be just to allow Salina Land to get pay for the oil taken out under these various arrangements without making her account for the $2,500 and she will be required so to do.

We are not able from the data we have before us to render final judgment here. The court below adopted as a measure of the rights of the parties the rule of unintention-

al trespasser. Under that rule, the value of the oil taken from the ground, less the cost of the production, is allowed to the owner of the land. We hold that the lease under which the oil company was operating expired on May 6, 1918, and that for the oil taken thereafter the defendant producing company should account on that basis, and that the purchasing company is equally liable with the producing company to the landowner. As between the purchasing company and the producing company, the purchasing company would have a right to compel the producing company to give it good title to any oil bought.

There are in the case several periods of time in which there is a question as to whom the oil would go. From the time of the expiration of the lease to the death of the minor, the accounting for the oil would be a right of his estate. But in view of the fact that there were no debts and he was a minor, the necessity for an administrator does not exist in this case, and that right to an accounting descended, therefore, to his parents, each to be entitled to one-half. From the time of the death of the minor to the time of the Hal Miller lease, the right to the oil would belong to the heirs, the parents, subject to the rule announced above as to the cost of production. It appears that $200 a month was found by the court below to be this cost. It further appears that the guardian of the minor received the value of the one-eighth of the oil for some days after the death of the minor, which belonged to the parents. It further appears that some portion of the proceeds of the oil was in the hands of the purchasing company at the time of the filing of the suit, but the amount of it is blank in the judgment and is blank in the pleadings. It further appears that payments were made at various times on division orders, signed by the heirs, to the present defendant in error, Salina Land, as well as to her former coplaintiff, Joseph H. Land.

The cause, therefore, will be reversed and remanded, with directions to the lower court to have an accounting between the defendant in error, Salina Land, and the plaintiffs in error for one-half of the oil taken from the land between the expiration of the lease and the death of the minor, and by allowing her one-half of what was not paid for to the guardian of the minor during that time, and from the time of the death of the minor to the time of the Miller lease, Salina Land will be entitled to one-half of the oil produced, less the expenses of operation.

It further appears that a settlement was had between the guardian of the deceased with Salina Land for the amount of money that he had received in his capacity as guardian that was undisposed of during his guardianship. It is here insisted that by reason of taking such funds Salina Land was estopped from denying the validity and continuation of the lease, but we do not find that her conduct in this matter would preclude her from having an accounting on the lines heretofore indicated, but we hold that she is not entitled to recover again for anything that she has already received in the settlement between her and the guardian. We further hold that she should be required to account for the $2,500 that she received from the Pluto Oil & Gas Company on the lease that failed, as we do not think that she is entitled to have this money and at the same time recover for the oil without one being offset by the other.

The cause is therefore reversed and remanded, with the directions to have the accounting as indicated above, and to exclude therefrom anything arising from the operation of the land during the time of the lease under which it was developed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., absent.