Rex V. CLEMENS and Ethel Clemens,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 67–562.

United States District Court
D. Oregon.

Sept. 30, 1968.

Joyle C. Dahl, Duffy, Stout, George-
son & Dahl, Portland, Or., for plaintiffs.

Sidney I. Lezak, U. S. Atty., District
of Oregon, Portland, Or., for defendant.

## OPINION AND FINDINGS

KILKENNY, District Judge:

Presented for decision is the question
of whether plaintiffs met the six-month

holding period requirement of 26 U.S.C. § 631(a),[1] in connection with timber cut during their taxable year 1964. They acquired the timber as a result of three Bureau of Land Management Timber sales. The taxpayers elected to treat the profit on the timber, cut in the year 1964, as a long-term capital gain. The District Director took the position that the six-month holding period had not elapsed on January 1, 1964. Accordingly, he assessed a deficiency against plaintiffs. They paid the deficiency, together with interest, and prosecute this action for a refund.

There is no dispute on the facts. Following its usual procedure, the BLM, in May, 1963, gave public notice of auction sales of timber on three individual tracts. The timber on one tract was offered on June 18th, the other two on June 28th. The bids were made in accordance with regulations issued by the Department of the Interior. The regulations provided that bids would be received, either written and sealed or oral, with the contract to be awarded to the highest bidder unless all bids were rejected or the bidder was not responsible or qualified.

On the fixed dates, the timber on the three tracts was sold at auction on oral bids by an authorized representative of the Secretary of the Interior. Plaintiffs had previously qualified to bid on the timber on each of the three tracts by submitting, in each instance, a certified check amounting to 10% of the appraised value of the timber to be sold. Plaintiffs, through their agent, were the only bidders to qualify on these sales, and, upon the expiration of the time to receive additional bids, plaintiffs were declared to be the highest bidders on each tract at the minimum suggested price. Plaintiffs' agent, after each bid, submitted, on behalf of the plaintiffs, a

written bid deposit form provided by the BLM.

On July 5, 1963, plaintiffs were formally notified that their bids on two tracts had been accepted and on July 16, 1963, were notified that the bid on the third tract had been accepted. The letter of acceptance included the standard timber sale contract and performance bond for execution by plaintiffs. Plaintiffs forthwith executed and returned these forms. Later, the respective contracts were signed and then returned to plaintiffs with second letters dated respectively July 12th, July 29th and August 1st.

The principal issue is whether plaintiffs' owned, or had a contract right to cut, the timber on the respective tracts prior to July 1, 1963.

Plaintiffs urge that they became the owners of, with the contract right to cut, the timber when their bids were submitted and they were declared the high bidders on June 16th and June 28th and consequently qualified as purchasers before July 1, 1963. The Government takes the position that there was no contract and that plaintiffs did not acquire a title or right to the timber until the bids were accepted. It is agreed that the formal acceptance occurred after July 1st.

Plaintiffs rely on the general rule that in auction sales, a bid is regarded as an offer to contract which is accepted "by the fall of the hammer." Williston, Contracts, (3d ed.) § 29; Uniform Commercial Code § 2–328, ORS[2] 72.3280. Here, we must recognize that the auction was conducted under certain regulations issued by the Department of the Interior. The notice of sale positively stated that the sale would be made "pursuant to instructions to bidders, attached hereto." The instructions included a provision[3] which clearly indicated

---

1. Section 631(a), Internal Revenue Code of 1954.

2. Oregon Revised Statutes.

3. *"Award of Contract.* The Government may require the high bidder to furnish

such information as is necessary to determine the ability of the bidder to perform the obligations of the contract. The contract will be awarded to the high bidder, unless he is not qualified or responsible, or unless all bids are rejected. If the high

that the "fall of the hammer" would not create a present interest in the highest bidder, but that he would be awarded the contract if he was qualified and responsible.

Further indicating that the "fall of the hammer" did not complete the contract, is the language of the confirmation which was signed by the agent of the purchasers on the date of sale.[4] These instruments conclusively establish that there was no contract until the bids were accepted by proper authority.

The provisions in the notice of sale and in the confirmation by the purchasers are patterned after the regulations promulgated by the Secretary of the Interior.[5] Inasmuch as there is no specific legislation on sales procedure, the Secretary may promulgate sales regulations, pursuant to his general rule making power. 43 U.S.C. § 1201. The plaintiffs were bound by these regulations, inasmuch as their publication in the Federal Register provided constructive notice. 44 U.S.C. § 307. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, 175 A.L.R. 1075 (1947); Ferry v. Udall, 336 F.2d 706 (9th Cir.1964). Further supporting this view are Wagar Lumber Co. v. United States, 181 F.Supp. 388 (W.D.Wash.S.D.1960) and Giustina v. United States, 190 F.Supp. 303 (D.Or.1960), aff'd. in part, vacated in part, 313 F.2d 710 (9th Cir.1963).

Next, plaintiffs urge that the contracts, even though executed after July 1st, should relate back to the dates of the respective auctions.

In general, this rule is applied in cases where it is necessary to protect the grantee, lessee or an innocent purchaser against potential intervening rights of heirs, devisees, other grantees, lessees or encumbrancers with notice. Pickering v. Lomax, 145 U.S. 310, 12 S.Ct. 860, 36 L.Ed. 716 (1892); Lykins v. McGrath, 184 U.S. 169, 22 S.Ct. 450, 46 L.Ed. 485 (1902); Anchor Oil Co. v. Gray, 256 U.S. 519, 41 S.Ct. 544, 65 L.Ed. 1070 (1921). The doctrine of relation back was employed in those cases in order to protect Indians from their own lack of good business judgment. Concededly, it has been used in other types of cases, but the doctrine is no longer a favorite with the law. 1 Williston Contracts (3d ed.) § 96. Originally, the doctrine was grounded on the theory that the acceptance should be simultaneous with the offer in order to formulate a contract. Consequently, the relation back fiction was used. Today, however, an offer is continuing for a reasonable period of time or for a fixed time and if acceptance is made within that period of time the mutual assent necessary to the formation of the contract is supplied, and, the fiction is no longer required.

For that matter, to apply the fiction to the facts in this case would completely destroy the intention of the parties. Here, no one intended that plaintiffs would acquire an ownership in the timber, nor a right to cut the same, until after the offer created by the bid had been accepted by the Government. I share Judge Boldt's statement in *Wagar* that "The policy basis for the cited rule is wholly absent in the application of Int.Rev.Code of 1939 § 117(k) [predecessor of 631(a)] and the legal fiction of relation back ought not to be invoked

bidder is not qualified or responsible, or fails to sign and return the contract together with the required performance bond, the contract may be offered and awarded to the highest of the bidders who is qualified, responsible, and willing to accept the contract."

4. "IT IS AGREED That the bid deposit shall be retained by the United States as liquidated damages *if the bid is accepted*

and the undersigned fails to execute the sale contract and furnish a satisfactory performance bond * * *.

　　*　　　*　　　*　　　*　　　*

"If the timber sale contract is executed, it is understood that the undersigned shall be liable for the total purchase price. * * *" (Emphasis supplied.)

5. 43 C.F.R.: § 5433.3 and 5433.4.

to extend the holding period prescribed by that statute."

Plaintiffs believe that the Court of Appeals decision in *Giustina* supports their theory that the acceptances of the Government should relate back to the dates of the auctions. The language on which plaintiffs rely is probably a typographical error. The lower court there found that the bidding took place on March 4, 1948, and that the bid was accepted by letter on March 11, 1948. Nonetheless, the Court of Appeals used March 4th, the bid date, as the acceptance date. There is nothing in the opinion of the Court of Appeals which indicates that it intended to modify, in any way, the findings of the District Court on this issue. For that matter, it appears that the Court of Appeals intended to adopt the District Court's findings on that issue. *Giustina* is of no help to plaintiffs.

The *Wagar* and *Giustina* cases were decided long prior to June, 1963. Obviously, plaintiffs were not aware of those decisions. Otherwise, they would have secured an acceptance of the bids before July 1st, or would have secured a modification of the specifications and the contract which would permit cutting in a year later than 1964. My sympathy is with the plaintiffs. The law is against them. Internal Revenue is not noted for its conscience. The principles of equity play little part in the administration of the Act.

Reluctant as I am, the above requires a finding that the plaintiffs failed to meet the six-month holding period requirement of § 631(a) of the Internal Revenue Code of 1954 with respect to timber cut during the taxable year 1964 from tracts acquired as a result of the BLM timber sales, above mentioned. Plaintiffs' complaint and this cause must be dismissed.

This opinion shall serve as my findings and conclusions.